1
2
3
4        UNITED STATES DISTRICT COURT

5        DISTRICT OF NEVADA

6        * * *

7   GLOBAL EVENTMAKERS, INC.,

8        Plaintiff,                    2:05-CV-00019-PMP-PAL

9   v.                                 2:06-CV-00050-PMP-PAL

10  AMERICAN MONUMENT                   O R D E R
    FOUNDATION, LLC,
11
        Defendant.
12

13          Presently before the Court is Plaintiff Global Eventmakers, Inc.'s ("Global")

14  Motion for Preliminary Injunction and Renewed Application for Writ of Possession (Doc.

15  #69) with supporting declarations of Lawrence A. Creeger and Shawn A. Mangano (Doc.

16  ##70-72), filed on June 9, 2006.  Defendant American Monument Foundation, LLC

17  ("AMF") filed an Opposition to Global Eventmaker's Motion for Preliminary Injunction

18  and Renewed Application for Writ of Possession (Doc. #83) on June 16, 2006.  Plaintiff

19  filed a Reply (Doc. #86) on June 22, 2006.  This Court held a hearing on the motion on July

20  6, 2006.

21  **I. BACKGROUND**

22          This dispute involves two monuments sculpted by Brett Livingstone Strong, the

23  Constitutional Monument and the Presidential Monument (collectively "the Monuments").

24  (Decl. of Lawrence A. Creeger in Supp. of Pl.'s Mot. for Prelim. Inj. & Renewed

25  Application for Writ of Possession ("Creeger Decl.") [Doc. #72] at 2.)  As of February

26  2002, Jeffory Fairbrother ("Fairbrother") owned all rights in the Constitutional Monument.

1   (Id. at 3.)  On February 5, 2002, Fairbrother and Defendant AMF entered into an asset

2   purchase agreement in which Fairbrother agreed to sell to AMF the Constitutional

3   Monument for $2.5 million.  (Creeger Decl., Ex. C.)  In connection with this Agreement,

4   AMF executed a promissory note in favor of Fairbrother in the amount of $2.5 million.

5   (Creeger Decl., Ex. D.)

6          In January 2002, Fairbrother entered into an asset purchase agreement in which

7   he agreed to buy the Presidential Monument from Brian Hermelin and Linda Nelson for

8   $280,000.  (Creeger Decl. at 3.)  On February 5, 2002, Fairbrother and AMF agreed

9   Fairbrother would sell to AMF all rights Fairbrother had in the asset purchase agreement for

10  the Presidential Monument for $280,000.  (Id.)  AMF and Fairbrother also entered into a

11  security agreement granting Fairbrother a security interest in the Monuments.  (Creeger

12  Decl., Ex. E.)  Fairbrother perfected his security interest in the Monuments by making the

13  required filings in the states of Virginia, Nevada, and California.  (Creeger Decl., Ex. F.)

14  The Court will refer to the agreements between Fairbrother and AMF regarding the two

15  Monuments collectively as the "AMF/Fairbrother Agreements."

16         In June 2003, Fairbrother informed AMF it was in default under the

17  AMF/Fairbrother Agreements.  (Creeger Decl., Exs. G, H.)  According to Plaintiff Global's

18  president, Lawrence A. Creeger ("Creeger"), Fairbrother stated repeatedly that AMF was

19  not paying on the promissory note, and that without such payment he would be unable to

20  pay for his son's[1] health care needs.  (Creeger Decl. at 4.)  Creeger asserts Fairbrother also

21  stated Fairbrother would be unable to pay a debt he owed to Global if AMF did not pay him

22  on the note.  (Id. at 5.)

23  ///

24  ///

25

26         [1] Fairbrother's son suffered a debilitating stroke in 2002.  (Creeger Decl. at 4.)

2

On May 2, 2004, AMF and Global entered into an asset purchase agreement in which AMF agreed to sell to Global the Monuments and all rights therein for $600,000 ("AMF/Global Agreement").  (Opp'n to Global Eventmaker's Mot. for Prelim. Inj. & Renewed Application for Writ of Possession; Countermot. for Summ. J. as to AMF's Claim of Fraudulent Transfer ["Opp'n"] [Doc. #83], Ex. 10.)  Completion of the AMF/Global Agreement was contingent upon resolving all outstanding claims and litigation between AMF and Fairbrother.  (Id. at Schedule 1.4.)

According to Global, on May 19, 2004, Global and Fairbrother entered into an agreement in which Fairbrother assigned all his rights in the Monuments and related agreements and security interests to Global (the "Global/Fairbrother Agreement").  (Creeger Decl. at 5 & Ex. I.)  The Global/Fairbrother Agreement had several contingencies, including that Fairbrother would settle all claims with AMF and others regarding the Monuments by March 1, 2005.  (Creeger Decl., Ex. I at Schedule 1.4.)  If the parties met the contingencies by March 1, 2005, the Global/Fairbrother Agreement required Fairbrother to repay $67,500 of the $155,000 he owed to Global by March 1, 2005.  (Creeger Decl., Ex. I at Schedule 1.6.)  If he did not pay off the debt by this date or the settlement was not final by this date, Fairbrother would have to pay Global $155,000 by March 22, 2005.  (Id.)  If Fairbrother did not pay off the $155,000 prior to that time, Global would forgive the $155,000 debt and place $1.9 million in a trust account for Fairbrother's son in exchange for Fairbrother's rights in the promissory note and security agreements on the Monuments.  (Id. & Schedule 1.2.)

Global was unable to secure Fairbrother's cooperation, and the parties never consummated the AMF/Global Agreement.  (Opp'n, Exs. 12-19.)  As a result, litigation between AMF, AMF's principal manager Thomas Neavitt ("Neavitt"), and Fairbrother commenced.  On December 1, 2004, Neavitt filed suit against Fairbrother for two Chinese Gold bonds he sold to Fairbrother and for which Fairbrother had not paid.  (Opp'n, Ex. 21.)

In November 2005, Neavitt obtained a default judgment against Fairbrother for approximately $13 million.  (Opp'n, Exs. 20, 21.)  On November 30, 2005, Neavitt obtained a writ of execution identifying Fairbrother's interests in the purchase agreement, financing statements, and promissory note as possible sources for satisfying the judgment.  (Opp'n, Ex. 22.)  In late December 2005, Global filed UCC Financing Statements in Nevada, California, and Virginia to perfect its security interests in the Monuments allegedly obtained through the May 2004 Global/Fairbrother Agreement.  (Creeger Decl., Ex. J.)

On October 14, 2004, AMF filed suit against Fairbrother in Nevada state court regarding right and title to the Monuments.  (Notice of Removal of Action Under 28 U.S.C. § 1441(b) (Diversity) [2:05-CV-00019, Doc. #1], Ex. A.)  Fairbrother removed the action to this Court.  (Notice of Removal of Action Under 28 U.S.C. § 1441(b) (Diversity) [2:05-CV-00019, Doc. #1].)  On April 22, 2005, Fairbrother filed an Answer and Counterclaims against AMF, asserting his rights in the purchase agreement, promissory note, and security agreement.  (Def.'s Answer, Affirmative Defensives & Countercls. [Doc. #11].)

AMF currently is warehousing the Monuments in California.[2]  (Decl. of Shawn A. Mangano, Esq. in Supp. of Pl.'s Mot. for Prelim. Inj. & Renewed Application for Writ of Possession ["Mangano Decl."] [Doc. #71], Ex. A at 28-29.)  AMF has not made any payments towards the $2.5 million note.  (Id. at 35-40.)  The AMF/Fairbrother Agreements required AMF to insure the Presidential Monument for $5 million.  (Id. at 19.)  AMF has not purchased any such insurance.  (Id.)

On January 13, 2006, Global brought suit in this Court alleging AMF breached the relevant agreements by failing to pay sums due and owing on the note, by failing to permit inspection of the Monuments, and by relocating the Monuments without Global's

---

[2]    At the hearing conducted July 6, 2006, however, counsel clarified that one Monument is currently stored in Simi Valley, California and the other in Virginia.

consent (count one).  (2:06-CV-00050, Compl. at 5-6.)  Further, Global alleges AMF

breached the covenant of good faith and fair dealing by falsely inducing Fairbrother to sell

the Constitutional Monument to AMF and by falsely inducing Global to enter into the

AMF/Global Agreement (count two).  (Id. at 6-7.)  Additionally, Global alleges it has a

perfected security interest in the Monuments, AMF wrongfully has withheld the secured

property, and Global therefore is entitled to an order compelling AMF to return the

Monuments (count three [mislabeled in the Complaint as count four]).  (Id. at 7-8.)  Finally,

Global asserts that because the Monuments are unique works of art, money damages are

insufficient, and Global is entitled to specific performance under the AMF/Global

Agreement (count four [mislabeled in the Complaint as count five]).  (Id. at 8-9.)  AMF has

counterclaimed for fraudulent transfer, intentional interference with prospective economic

advantage, and "special damages" for attorney's fees.  (Answer & Countercl. [Doc. #29,

2:06-CV-00050].)

     Global moves for a preliminary injunction, requesting the Court require AMF to

obtain the contractually-required $5 million in insurance on the Presidential Monument.

Additionally, Global renews an earlier request for a writ of possession for the Monuments.

Global asserts it is the proper owner with a security interest in the Monuments and AMF

undisputably has breached the agreements by failing to make a single payment on the note,

by failing to procure insurance as required, by permitting a lien on the Monuments without

Global's approval, and by moving the Monuments without Global's consent.

     AMF responds that Global has no standing to enforce the agreements because the

transfer of interests from Fairbrother to Global was fraudulent.  AMF contends the transfer

was done in the face of litigation against Fairbrother with the intent to defraud Fairbrother's

creditors.

\\\

\\\

## II.  LEGAL STANDARD

"The traditional test for granting preliminary injunctive relief requires the applicant to demonstrate: (1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction."  Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003).  Alternatively, an applicant seeking injunctive relief may demonstrate "either: a combination of probable success on the merits and the possibility of irreparable injury; or serious questions going to the merits and that the balance of hardships tips sharply in the applicant's favor."  Id.  These two formulations of the alternative test represent "a continuum of equitable discretion, whereby 'the greater the relative hardship to the moving party, the less probability of success must be shown.'"  Id. (quoting Nat'l Ctr. for Immigrants Rights, Inc. v. INS, 743 F.2d 1365, 1369 (9th Cir. 1984)).

A prohibitory injunction preserves the status quo whereas a mandatory injunction goes beyond maintaining the status quo.  Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994).  Mandatory injunctions are disfavored.  Id.  A court should not grant a mandatory preliminary injunction "unless the facts and law clearly favor the moving party."  Id. (quotations omitted).

## III.  DISCUSSION

Global moves for  a preliminary injunction on two grounds.  First Global asserts AMF has breached the agreement on the Presidential Monument to maintain $5 million in insurance on this monument, and AMF should be required to obtain the insurance because AMF has no other assets to satisfy a judgment.  Second, Global asserts it is entitled to a writ of possession.

### A.  Insurance

Global contends the AMF/Fairbrother Agreement, in which Global asserts it now owns Fairbrother's rights, requires AMF to obtain $5 million in insurance on the

Presidential Monument.  Global contends AMF admits it has not obtained this insurance, that this is a breach of the agreement, and AMF should be required to obtain the insurance. Further, Global notes that AMF has no assets other than the Monuments and the Monuments are one-of-a-kind pieces of art, and therefore loss or damage to them would leave Global without a remedy.  AMF asserts Global has no standing to assert any rights to the Monuments or to enforce the AMF/Fairbrother Agreements' requirement that AMF insure the Presidential Monument because of the alleged fraudulent transfer between Fairbrother and Global.

AMF is contractually required to obtain the insurance under the AMF/Fairbrother Agreement.  AMF's principal manager, Neavitt, testified at his deposition that AMF had not secured the insurance.  AMF has no substantial assets beyond the Monuments themselves. Should Global prevail, AMF has no means to satisfy a judgment should something happen to the Monuments without insurance.

At the hearing in this matter, AMF agreed it had no assets other than the Monuments, but it believed the Monuments were secure in storage and faced little to no possibility of theft or damage.  AMF requested that if it is required to obtain insurance on the Monuments, the Court require Global to post a bond sufficient to cover AMF's costs should AMF ultimately prevail.  The Court concludes this argument best protects the interests of all parties.

The Monuments are the crux of this dispute, and should those assets be damaged, destroyed, or lost, Global is without remedy as AMF has no other assets.  Additionally, the bond from Global ensures that should AMF prevail in this matter, it will be capable of recovering the insurance cost.  Because the AMF/Fairbrother Agreements contractually required AMF to obtain $5 million in insurance on the Presidential Monument, the Court will order AMF to obtain said insurance, unless the parties mutually agree in writing on another amount.  Additionally, should the parties mutually agree in writing that the

Monuments are secure in their present locations such that insurance and the associated bond are unnecessary, the parties may notify the Court of such agreement, and the Court will vacate the preliminary injunction requiring insurance and the associated bond.

**B.  Writ of Possession**

Global next moves for a writ of possession, asserting it owns Fairbrother's rights in the AMF/Fairbrother Agreements; AMF has breached the AMF/Fairbrother Agreements; and Global is entitled to possess the Monuments.  AMF responds that Global has no standing to assert interests in the AMF/Fairbrother Agreements because the transfer between Global and Fairbrother was fraudulent.

Serious questions going to the merits of the fraudulent transfer issue remain and the parties are in the process of briefing summary judgment motions on the issue of AMF's challenge to Global's standing to assert interests in the AMF/Fairbrother Agreements.  If the transfer between Global and Fairbrother was fraudulent, Global has no right to possess the Monuments.  Global's concerns about the Monuments' safety and Global's ability to recover against AMF will be alleviated by the Court's order requiring AMF to obtain insurance.  The Court therefore will deny without prejudice Global's motion for writ of possession.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff Global Eventmakers, Inc.'s Motion for Preliminary Injunction and Renewed Application for Writ of Possession (Doc. #69) is hereby GRANTED in part and DENIED in part.  The motion is granted in that the Court will order Defendant American Monument Foundation, LLC to insure the Presidential Monument.  Plaintiff's motion for a writ of possession is denied without prejudice.

IT IS FURTHER ORDERED that Defendant American Monument Foundation, LLC obtain $5 million in insurance on the Presidential Monument, as contractually required, unless the parties otherwise agree in writing to another amount.

1        IT IS FURTHER ORDERED that Plaintiff Global Eventmakers, Inc. post a bond

2  equal to the costs incurred by Defendant American Monument Foundation, LLC, in

3  securing the insurance required by this Order.

4

5  DATED:  July 7, 2006

6

7  _____

8       PHILIP M. PRO
        Chief United States District Judge

9