UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| AMERICAN MONUMENT FOUNDATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JEFFORY FAIRBROTHER, <br><br> Defendant. | 2:05-CV-00019-PMP-PAL <br> **BASE FILE** <br><br><br> O R D E R |
| GLOBAL EVENTMAKERS, INC., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> AMERICAN MONUMENT FOUNDATION, LLC, <br><br> Defendant/Counterclaimant. | 2:06-CV-00050-PMP-PAL <br> **CONSOLIDATED WITH BASE FILE** |

Presently before the Court is Global EventMakers, Inc.'s ("Global") Motion for Partial Summary Judgment (2:05-CV-00019-PMP-PAL, Doc. #76) with supporting declarations (2:05-CV-00019-PMP-PAL, Doc. #77, #78), filed on June 12, 2006. On June 27, 2006, American Monument Foundation, LLC ("AMF") filed an Opposition to Global Eventmaker's Motion for Partial Summary Judgment (2:05-CV-00019-PMP-PAL, Doc. #87). Global filed a Reply (2:05-CV-00019-PMP-PAL, Doc. #88) on June 29, 2006.

///

///

Also before the Court is Global's Motion for Partial Summary Judgment Directed to AMF's Counterclaim (2:05-CV-00019-PMP-PAL, Doc. #85), filed on June 21, 2006. On July 11, 2006, AMF filed an Opposition to Global Eventmaker's Motion for Partial Summary Judgment Directed to AMF's Counterclaim (2:05-CV-00019-PMP-PAL, Doc. #100). Additionally, AMF filed a Motion for Summary Judgment as to AMF's Claims of Fraudulent Transfer (2:05-CV-00019-PMP-PAL, Doc. #83, #94; 2:06-CV-00050-PMP-PAL, Doc. #31) on July 5, 2006. Global filed an Opposition to Motion for Summary Judgment on AMF's Claim of Fraudulent Transfer (2:06-CV-00050-PMP-PAL, Doc. #35) on July 20, 2006. AMF filed a Reply (2:05-CV-00019-PMP-PAL, Doc. #105) on August 3, 2006. AMF also filed a Supplement to its Reply (2:05-CV-00019-PMP-PAL, Doc. #112) on August 11, 2006.

Finally, Thomas Neavitt ("Neavitt") filed a Motion for Leave to Intervene (2:06-CV-00050-PMP-PAL, Doc. #36) on August 4, 2006. Global filed an Opposition to Defendant's Motion for Leave to Intervene (2:06-CV-00050-PMP-PAL, Doc. #38) on August 22, 2006. Neavitt filed a Reply (2:06-CV-00050-PMP-PAL, Doc. #39) on September 1, 2006.

**I. BACKGROUND**

This dispute involves two monuments sculpted by Brett Livingstone Strong, the Constitutional Monument and the Presidential Monument (collectively "the Monuments"). (Decl. of Lawrence A. Creeger in Supp. of Pl.'s Mot. for Prelim. Inj. & Renewed Application for Writ of Possession ["Creeger Decl."] [2:05-CV-00019-PMP-PAL, Doc. #72] at 2.) As of February 2002, Jeffory Fairbrother ("Fairbrother") owned all rights in the Constitutional Monument. (Id. at 3.) On February 5, 2002, Fairbrother and AMF entered into an asset purchase agreement in which Fairbrother agreed to sell to AMF the Constitutional Monument for $2.5 million. (Creeger Decl., Ex. C.) In connection with this Agreement, AMF executed a promissory note in favor of Fairbrother in the amount of $2.5

million. (Creeger Decl., Ex. D.)

In January 2002, Fairbrother entered into an asset purchase agreement in which he agreed to buy the Presidential Monument from Brian Hermelin and Linda Nelson for $280,000. (Creeger Decl. at 3.) On February 5, 2002, Fairbrother and AMF agreed Fairbrother would sell to AMF all rights Fairbrother had in the asset purchase agreement for the Presidential Monument for $280,000. (Id.) AMF and Fairbrother also entered into a security agreement granting Fairbrother a security interest in the Monuments. (Creeger Decl., Ex. E.) Fairbrother perfected his security interest in the Monuments by making the required filings in the states of Virginia, Nevada, and California. (Creeger Decl., Ex. F.) The Court will refer to the agreements between Fairbrother and AMF regarding the two Monuments collectively as the "AMF/Fairbrother Agreements."

AMF has not made any payments towards the $2.5 million note. (Decl. of Shawn A. Mangano, Esq. in Supp. of Pl.'s Mot. for Prelim. Inj. & Renewed Application for Writ of Possession ["Mangano Decl."] [2:05-00019-PMP-PAL, Doc. #71], Ex. A at 35-40.) Additionally, the AMF/Fairbrother Agreements required AMF to insure the Presidential Monument for $5 million. (Id. at 19.) AMF did not purchase any such insurance.[1] (Id.)

In June 2003, Fairbrother informed AMF it was in default under the AMF/Fairbrother Agreements. (Creeger Decl., Exs. G, H.) According to Global's president, Lawrence A. Creeger ("Creeger"), Fairbrother repeatedly told Creeger that AMF was not paying on the promissory note, and that without such payment he would be unable to pay for his son's[2] health care needs. (Creeger Decl. at 4.) Creeger avers Fairbrother also stated Fairbrother would be unable to pay debts he owed to Global if AMF did not pay him

---

[1] In response to Global's motion for a preliminary injunction, this Court ordered AMF to procure the required insurance in July 2006. (Order [2:05-CV-00019-PMP-PAL, Doc. #97].)

[2] Fairbrother's son suffered a debilitating stroke in 2002. (Creeger Decl. at 4.)

3

on the note.  (Id. at 5.)

On May 2, 2004, AMF and Global entered into an asset purchase agreement in which AMF agreed to sell to Global the Monuments and all rights therein for $600,000 ("AMF/Global Agreement").  (Opp'n to Global Eventmaker's Mot. for Prelim. Inj. & Renewed Application for Writ of Possession; Countermot. for Summ. J. as to AMF's Claim of Fraudulent Transfer ["Opp'n"] [2:05-CV-00019-PMP-PAL, Doc. #83], Ex. 10.)  Completion of the AMF/Global Agreement was contingent upon resolving all outstanding claims and litigation between AMF, AMF managing member Neavitt, and Fairbrother.  (Id. at Schedule 1.4.)

According to Global, on May 19, 2004, Global and Fairbrother entered into an agreement in which Fairbrother assigned all his rights in the Monuments and related agreements and security interests to Global (the "Global/Fairbrother Agreement").  (Creeger Decl. at 5 & Ex. I.)  The Global/Fairbrother Agreement had several contingencies, including that Fairbrother would settle all claims with AMF and others regarding the Monuments by March 1, 2005.  (Creeger Decl., Ex. I at Schedule 1.4.)  If the parties met the contingencies by March 1, 2005, the Global/Fairbrother Agreement required Fairbrother to repay $67,500 of the $155,000 he owed to Global by March 1, 2005.  (Creeger Decl., Ex. I at Schedule 1.6.)  If he did not pay off the debt by this date or the settlement was not final by this date, Fairbrother would have to pay Global $155,000 by March 22, 2005.  (Id.)  If Fairbrother did not pay off the $155,000 prior to that time, Global would forgive the $155,000 debt and place $1.9 million in a trust account for Fairbrother's son in exchange for Fairbrother's rights in the AMF/Fairbrother Agreements.  (Id. & Schedule 1.2.)

On June 2, 2004, Creeger sent Neavitt an email containing an amendment to AMF's agreement.  (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc. #9], Ex. OO.)  In the email, Creeger indicated Global's "agreement with [Fairbrother] is valid until December 31, 2005.  Meaning that if for whatever reason the court thing is not settled by then, then he

4

1  [Fairbrother] would be entitled to go back after the large monument." (Id.)  At his
2  deposition, Creeger stated he was unsure why he mentioned the December 31, 2005 end
3  date in the email when the Global/Fairbrother Agreement made no reference to that date.
4  (Supplement to Reply to Pl.'s Opp'n to Mot. for Summ. J. as to AMF's Cl. of Fraudulent
5  Transfer [2:05-CV-00019-PMP-PAL, Doc. #112], Ex. 2 at 111.)
6      AMF thereafter informed Global it was concerned Global was not securing
7  Fairbrother's cooperation in settling and therefore the contingencies in the AMF/Global
8  Agreement were not being met.  (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc. #9],
9  Ex. PP.)  Global responded that it did "not anticipate the contingencies referred to in your
10 letter and memorandum to be a deal breaker." (Mot. to Dismiss [2:06-CV-00050-PMP-
11 PAL, Doc. #9], Ex. QQ.)  Global requested further information from AMF, however.  (Id.)
12 After AMF apparently did not provide the requested documentation, Global again requested
13 more information from AMF.  (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc. #9], Exs.
14 RR, SS, TT.)
15     Global was unable to secure Fairbrother's cooperation in settling with AMF and
16 the parties never consummated the AMF/Global Agreement.  (Opp'n, Exs. 12-19.)  As a
17 result, litigation between AMF, Neavitt, and Fairbrother commenced.  On October 14,
18 2004, AMF filed suit against Fairbrother in Nevada state court regarding right and title to
19 the Monuments.  (Notice of Removal of Action Under 28 U.S.C. § 1441(b) (Diversity)
20 [2:05-CV-00019-PMP-PAL, Doc. #1], Ex. A.)  Fairbrother removed the action to this
21 Court.  (Notice of Removal of Action Under 28 U.S.C. § 1441(b) (Diversity) [2:05-CV-
22 00019-PMP-PAL, Doc. #1].)  On December 1, 2004, Neavitt filed suit against Fairbrother
23 in Nevada state court regarding two Chinese Gold bonds he sold to Fairbrother for which
24 Fairbrother had not paid.  (Opp'n, Exs. 21, 36.)  Fairbrother removed the action to federal
25 court, but this Court remanded the suit back to state court on November 3, 2005.  (Id.)
26 ///

1    Fairbrother did not pay Global the $67,500 due by March 1, 2005 as required
2  under the Global/Fairbrother Agreement.  (Supplement to Reply to Pl.'s Opp'n to Mot. for
3  Summ. J. as to AMF's Cl. of Fraudulent Transfer [2:05-CV-00019-PMP-PAL, Doc. #112],
4  Ex. 2 at 103-04.)  Fairbrother also did not pay the $155,000 due under the same agreement
5  by March 22, 2005.  (Id. at 104.)  On March 22, 2005, Fairbrother signed a document
6  assigning to Global the lien on the Monuments in each of Fairbrother's security interest
7  filings in California, Nevada, and Virginia.  (Decl. of Lawrence A. Creeger in Supp. of
8  Application for Order to Show Cause & for Writ of Possession [2:06-CV-00050-PMP-PAL,
9  Doc. #4], Ex. F.)  Global has not funded the trust fund for Fairbrother's son as provided for
10 in the Global/Fairbrother Agreement.  (Supplement to Reply to Pl.'s Opp'n to Mot. for
11 Summ. J. as to AMF's Cl. of Fraudulent Transfer [2:05-CV-00019-PMP-PAL, Doc. #112],
12 Ex. 2 at 87; 106.)  However, Creeger testified that Global has paid Fairbrother
13 approximately $30,000 and has relieved $155,000 in debt Fairbrother owed Global pursuant
14 to the Global/Fairbrother Agreement.  (Id. at 98-101.)
15    On April 22, 2005, Fairbrother filed an Answer and Counterclaims against AMF
16 in the present action, asserting his rights in the AMF/Fairbrother Agreements.  (Def.'s
17 Answer, Affirmative Defensives & Countercls. [2:05-CV-00019-PMP-PAL, Doc. #11,
18 #12].)  In late April 2005, Creeger met with Neavitt and AMF representative Mike McGill
19 ("McGill").  (Decl. of Lawrence A. Creeger in Supp. of Opp'n to Mot. to Dismiss [Doc.
20 #16] at 2; Resp. to Pl.'s Opp'n to Def.'s Mot. to Dismiss [Doc. #18], Ex. A at 1, Ex. D at 1.)
21 According to Creeger, during this meeting he provided to McGill and Neavitt a copy of
22 Fairbrother's lien assignment to Global.  (Id.)  Neavitt and McGill deny Creeger gave them
23 any such document.  (Resp. to Pl.'s Opp'n to Def.'s Mot. to Dismiss [Doc. #18], Ex. A at 2,
24 Ex. D at 2.)  By May 2005, AMF advised Global it was wasting its time "chasing this deal."
25 (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc. #9], Ex. VV.)  Global responded that it
26 was "not in league" with Fairbrother and communicated with him only "to finalize our

6

agreement in place with him. An agreement, of which I might add, Tom Nevitt [sic] is fully aware." (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc. #9], Ex. WW.)

On September 7, 2005, Fairbrother filed his initial disclosures in this case in which he identified "Lawrence Creeger C/O Global Eventmakers, Inc." as an individual likely to have discoverable information. (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc #9], Ex. HH.) Fairbrother stated Creeger "has had various involvements with the Monuments over many years. He may have discoverable information on this and other facts or issues related to the transaction that is the subject of this lawsuit, including counterclaims." (Id. at 3.) Fairbrother did not mention he had assigned his interests in the Monuments to Global.

In November 2005, Neavitt obtained a default judgment against Fairbrother in the state court action for approximately $13 million. (Opp'n, Exs. 20, 21.) On November 30, 2005, Neavitt obtained a writ of execution identifying Fairbrother's interests in the AMF/Fairbrother Agreements as possible sources for satisfying the judgment. (Opp'n, Ex. 22.)

On December 1, 2005, AMF deposed Fairbrother in this action. (Mot. to Dismiss [2:06-CV-00050-PMP-PAL, Doc. #9], Ex. JJ.) Fairbrother was given the writ of execution at this deposition. (Supplement to Reply to Pl.'s Opp'n to Mot. for Summ. J. as to AMF's Cl. of Fraudulent Transfer [2:05-CV-00019-PMP-PAL, Doc. #112], Ex. 2 at 147.) During his deposition, Fairbrother testified he assigned the liens and security interests on the Monuments to Global. (Id. at 92.) Fairbrother stated he sold Global "everything" in May 2004. (Id. at 92-93.) Although Fairbrother repeatedly stated at his deposition that he assigned all his interests in the Monuments and the related promissory note and agreements to Global, Fairbrother contended he still had a viable counterclaim against AMF for the difference between what he received from Global and what he alleged AMF owed him under the AMF/Fairbrother Agreements. (Id. at 93-94, 97-99, 154-55.) Fairbrother stated

7

he asserted his counterclaims even after allegedly assigning all his interests in the Monuments to Global because an attorney, Ann McGihon, told him he "needed to keep the litigation going . . . ." (Id. at 121.) As for the terms of the alleged agreement between Global and Fairbrother, Fairbrother testified Global agreed to place some stock in a trust for Fairbrother's son and would forgive approximately $55,000 in debt Fairbrother owed to Global. (Id. at 152-54.)

Under questioning regarding his debt to Neavitt on the default judgment, Fairbrother stated he did not think Neavitt had "much chance of ever seeing that." (Id. at 130.) Fairbrother also stated his debt to Neavitt on the judgment was "meaningless" to him because he had no money and no interest in the Monuments after he transferred those interests to Creeger. (Id. at 154-55.) Fairbrother's deposition ended prematurely when Fairbrother revealed he had several glasses of wine during the lunch break. (Id. at 194-95.)

On December 9, 2005, Fairbrother signed a letter "advis[ing] and inform[ing] any and all parties that he has no ownership interest, whatsoever, whether personal or real" in the Monuments and related agreements and security interest filings. (Reply to Pl.'s Opp'n to Mot. for Summ. J. as to AMF's Cl. of Fraudulent Transfer [2:05-CV-00019-PMP-PAL, Doc. #105], Ex. 1.) That same day, Fairbrother also executed a power of attorney granting Creeger power as his attorney-in-fact. (Reply to Pl.'s Opp'n to Mot. for Summ. J. as to AMF's Cl. of Fraudulent Transfer [2:05-CV-00019-PMP-PAL, Doc. #105], Ex. 2.) On December 28, 29, and 30, 2005, Global filed Uniform Commercial Code Financing Statements in Nevada, California, and Virginia to perfect its security interests in the Monuments allegedly obtained through the May 2004 Global/Fairbrother Agreement. (Creeger Decl., Ex. J.)

On January 13, 2006, Global brought suit in this Court alleging AMF breached the AMF/Fairbrother Agreements by failing to pay sums due and owing on the note, by failing to permit inspection of the Monuments, and by relocating the Monuments without

Global's consent (count one).  (Compl. [2:06-CV-00050-PMP-PAL, Doc. #1] at 5-6.) Further, Global alleges AMF breached the covenant of good faith and fair dealing by falsely inducing Fairbrother to sell the Constitutional Monument to AMF and by falsely inducing Global to enter into the AMF/Global Agreement (count two).  (Id. at 6-7.)  Additionally, Global alleges it has a perfected security interest in the Monuments, AMF wrongfully has withheld the secured property, and Global therefore is entitled to an order compelling AMF to return the Monuments (count three [mislabeled in the Complaint as count four]).  (Id. at 7-8.)  Finally, Global asserts that because the Monuments are unique works of art, money damages are insufficient, and Global is entitled to specific performance under the AMF/Global Agreement (count four [mislabeled in the Complaint as count five]).  (Id. at 8-9.)  AMF has counterclaimed alleging the Global/Fairbrother Agreement is a fraudulent transfer and amounts to intentional interference with prospective economic advantage, and AMF requests "special damages" for attorney's fees.  (Answer & Countercl. [2:06-CV-00050-PMP-PAL, Doc. #29].)

On March 28, 2006, Fairbrother sent a letter to the Court in which he abandoned count one of his counterclaim against AMF for a declaratory judgment for immediate possession of the Monuments.  (Letter [2:05-CV-00019-PMP-PAL, Doc. #63].)  Fairbrother stated he wanted to abandon count one because:

> I no longer have an interest in the Presidential Monument or the Constitution Monument.  I assigned my interest in the Monuments to Global Eventmakers, who is currently suing American Monument Foundation for possession of the Monuments.  The assignment of my interests became effective around the time that I filed my counterclaim. I could not recall the effective date of this assignment, so I filed the counterclaim to protect any rights I may have had in the Monuments at that time.

(Id.)  The Court granted Fairbrother's request and dismissed with prejudice count one of his counterclaim against AMF.  (Order [2:05-CV-00019-PMP-PAL, Doc. #68].)

///

AMF and Global thereafter filed a series of motions in this Court in which Global sought summary judgment on AMF's alleged breach of the AMF/Fairbrother Agreements and requested a writ of possession for the Monuments. AMF responded with its own motions for summary judgment that Global had no interest in the Monuments because the transfer between Global and Fairbrother was a fraudulent attempt to circumvent Fairbrother's debts. In response to the fraudulent transfer argument, Global argued AMF had no standing to assert fraudulent transfer because AMF is not a creditor of either Fairbrother or Global. Thereafter, Neavitt filed a motion to intervene in this action, as he undisputably is a creditor of Fairbrother due to the $13 million state court default judgment. Global opposes Neavitt's intervention.

## II. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

### A. Cross Motions for Summary Judgment as to AMF's Counterclaims

Global moves for summary judgment on AMF's counterclaims, arguing AMF has no standing to assert a fraudulent transfer claim because AMF is not a creditor of Global or

1  Fairbrother.  Additionally, Global argues AMF cannot state a claim for intentional
2  interference with prospective economic advantage because Global cannot be liable for
3  enforcing a valid security interest.  Finally, Global argues AMF is not entitled to special
4  damages because special damages is a remedy, not a separate cause of action, and no
5  special damages are warranted because Global is entitled to summary judgment on AMF's
6  substantive counterclaims.
7        AMF responds by cross moving for summary judgment on its fraudulent transfer
8  claim.  AMF argues even if it is not a creditor, the alleged fraudulent transfer harmed AMF
9  because Global's claim of interest in the Monuments has precluded AMF from selling the
10  Monuments.  Additionally, AMF argues the fraudulent transfer has interfered with its
11  prospective economic advantage because it has prevented AMF from clearing title on the
12  Monuments and inhibited AMF's ability to sell the Monuments.  Finally, AMF argues it is
13  entitled to special damages because it has incurred costs defending Global's lawsuit that
14  Global brought based on the fraudulent transfer.

15        1.  Fraudulent Transfer
16        In an action for relief from a fraudulent transfer under Nevada law, "a creditor"
17  may avoid the transfer, attach or garnish the transferred asset, pursue injunctive relief, or
18  request appointment of a receiver.  Nev. Rev. Stat. § 112.210; see also Nev. Rev. Stat.
19  § 112.180; § 112.190.  A creditor is "a person who has a claim."  Nev. Rev. Stat.
20  § 112.150(4).  A claim "means a right to payment, whether or not the right is reduced to
21  judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
22  undisputed, legal, equitable, secured or unsecured."  Id. at § 112.150(3).
23        AMF has no standing to avoid the transfer between Global and Fairbrother as a
24  fraudulent transfer because AMF is not a creditor to either Global or Fairbrother.  AMF has
25  no right to payment from either Global or Fairbrother.  Rather, under the AMF/Fairbrother
26  Agreements, AMF owes either Fairbrother, or if the transfer was not fraudulent, Global,

11

$2.5 million on the promissory note.  Because AMF is not a "creditor," it is not entitled to bring a fraudulent transfer action under Nevada law.  Accordingly, the Court will grant Global's motion for summary judgment on count one of AMF's counterclaim (2:06-CV-00050-PMP-PAL, Doc. #29, count one).  The Court will deny AMF's motion for summary judgment on its first counterclaim.

### 2.  Intentional Interference with Prospective Economic Advantage

To establish the tort of interference with prospective economic advantage, the plaintiff must show:

> (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251, 1255 (Nev. 1998).

AMF asserts Global's claim to title in the Monuments through the allegedly fraudulent transfer interferes with AMF's ability to sell the Monuments to third parties.  Global argues it is entitled to enforce its valid security interest in the Monuments.  AMF responds the Global/Fairbrother Agreement is a fraudulent transfer.  Genuine issues of material fact remain as to whether the Global/Fairbrother Agreement constitutes a fraudulent transfer.  If Global's only claim of interest in the Monuments is based on a fraudulent transfer, a reasonable jury could find Global's interference with AMF's ability to sell the Monuments was not privileged or justified.  Accordingly, genuine issues of material fact remain regarding whether Global's interference is justified or privileged.  The Court therefore will deny Global's motion for summary judgment as to AMF's second counterclaim.

///

### 3. Special Damages

"[W]hen a party claims it has incurred attorney fees as foreseeable damages arising from tortious conduct or a breach of contract, such fees are considered special damages." Sandy Valley Assocs. v. Sky Ranch Estate Owners Ass'n, 35 P.3d 964, 969 (Nev. 2001). A party must plead special damages in the complaint. Id. To recover special damages, the incurred attorney fees "must be the natural and proximate consequence of the injurious conduct." Id.

AMF has pled special damages separately as Nevada law requires, contending that because Global pursued this lawsuit against AMF asserting rights in the Monuments achieved only through a fraudulent transfer, AMF has incurred costs and attorney's fees in litigating the suit. AMF argues these costs are the natural and proximate consequence of Global filing a frivolous lawsuit against AMF. Because genuine issues of material fact remain as to AMF's second counterclaim, the Court will deny Global's motion for summary judgment as to special damages.

**B. Global's Motion for Summary Judgment on Breach of Contract and Replevin/Claim and Delivery**

Global alleges AMF breached the AMF/Fairbrother Agreements by failing to pay on the promissory note, by failing to purchase the contractually required insurance, and by permitting a lien to be placed on the Monuments without the security interest holder's permission. Global therefore moves for summary judgment on its breach of contract and replevin/claim and delivery claims. AMF does not deny these allegations, but argues Global has no standing to assert breach of contract or replevin because the transfer between Global and Fairbrother was fraudulent and thus Global has no enforceable rights in the AMF/Fairbrother Agreements.

///

///

A person who is not a party to a contract or a contemplated beneficiary thereof cannot sue to enforce the contract. See Wyatt v. Bowers, 747 P.2d 881, 882 (Nev. 1987) (holding individuals who were not parties to or recipients of a particular promise cannot sue to enforce breach of that covenant); Olson v. Iacometti, 533 P.2d 1360, 1364 (Nev. 1975) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least, show that it was intended for his direct benefit." (quotation omitted)); see also Nev. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."). Accordingly, although AMF cannot bring a cause of action for fraudulent transfer and seek the remedies Nevada's fraudulent transfer statute provides, AMF may assert as a defense to Global's breach of contract and replevin claims that Global has no standing to enforce the AMF/Fairbrother Agreements because of the alleged fraudulent transfer.[3] If the Global/Fairbrother Agreement is a sham, AMF has been forced to defend a lawsuit by a party with no legitimate rights in the Agreements and to defend a separate counterclaim by the true party in interest, Fairbrother.

Under Nevada law, a transfer is fraudulent if the debtor made the transfer:

> (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > (2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

---

[3] Global has Article III standing to assert the claims in its Complaint. A party "need demonstrate only a colorable interest" in the disputed property or agreements to establish Article III standing. United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1192 (9th Cir. 2004). Global has demonstrated such a colorable interest by presenting evidence Fairbrother assigned his interests in the AMF/Fairbrother Agreements in the form of the Global/Fairbrother Agreement, Global's security interest filings, and affidavit and deposition testimony.

1  Nev. Rev. Stat. § 112.180(1).  In determining whether the debtor acted with actual intent,
2  the fact finder may consider whether the transfer was made to an insider; the debtor retained
3  possession or control of the property after the transfer; the debtor concealed the transfer; the
4  debtor had been sued or threatened with suit before making the transfer; the debtor
5  transferred substantially all his assets; the debtor absconded; the debtor removed or
6  concealed assets; the value of the consideration the debtor received was reasonably
7  equivalent to the value of the asset transferred; the debtor was insolvent or became
8  insolvent shortly after the transfer; the debtor transferred the asset around the time he
9  incurred a substantial debt; and the debtor transferred the business's essential assets to a
10 lienor who transferred the assets to an insider of the debtor.  Nev. Rev. Stat. § 112.180(2).
11 Alternatively, a transfer may be fraudulent if the debtor did not receive reasonably
12 equivalent value in exchange for the transfer and the debtor was insolvent or became
13 insolvent as a result of the transfer.  Nev. Rev. Stat. § 112.190(1).
14         Viewing the evidence in a light most favorable to the nonmoving party, AMF,
15 genuine issues of material fact remain as to whether Global is a party to the
16 AMF/Fairbrother Agreements.  A reasonable jury could find Fairbrother transferred his
17 interests in the Monuments to Global with actual intent to hinder, delay, or defraud Neavitt,
18 his creditor.  A reasonable jury could find Fairbrother transferred his interests to an insider,
19 Creeger, who had obtained a power of attorney over Fairbrother and acted on Fairbrother's
20 behalf in litigation involving Fairbrother's son, and who spoke with Fairbrother regarding
21 the litigation between Fairbrother and AMF.  (Opp'n, Ex. 9 at 115, 118, 122-23, 139;
22 Supplement to Reply to Pl.'s Opp'n to Mot. for Summ. J. as to AMF's Cl. of Fraudulent
23 Transfer [2:05-CV-00019-PMP-PAL, Doc. #112], Ex. 2 at 141.)  Additionally, Fairbrother
24 did not relinquish his claims to the Monuments after the alleged transfer.  Fairbrother
25 asserted and continued to press his counterclaim against AMF seeking possession of the
26 Monuments until March 2006 despite purportedly assigning those rights to Global in March

2005.

Further, a reasonable jury could find Global and Fairbrother concealed the transfer. Although Global contends it advised AMF of the assignment, AMF has presented sworn affidavits from McGill and Neavitt that Global did not provide them with notice of the assignment. Additionally, Fairbrother continued to pursue in this case his rights in the Monuments and failed to notify either the Court or AMF that he had assigned his rights. In his initial disclosures, Fairbrother mentioned Creeger as someone with knowledge of the Monuments, but did not mention he had assigned to Global his rights or otherwise suggest he had entered into any agreement with Global concerning the Monuments.

Additionally, a reasonable jury could find Neavitt and AMF had sued or threatened Fairbrother with suit before the transfer. AMF contends the Global/Fairbrother Agreement was backdated and the real transfer occurred in December 2005 after AMF handed Fairbrother the writ of execution at his deposition. Global's communications with AMF do not indicate Fairbrother assigned his interests in the Monuments to Global and inaccurately describe the Global/Fairbrother Agreement by suggesting that it would terminate on December 31, 2005 and all rights would revert to Fairbrother. Additionally, Global did not perfect its security interests in the Monuments until December 2005 despite the alleged transfer of rights occurring in March 2005. Global continued to contact AMF regarding the AMF/Global Agreement after March 2005, but did not indicate in any written correspondence that it owned Fairbrother's rights in the Monuments as of March 2005.

Furthermore, a reasonable jury could find suspect the timing between the $13 million judgment against Fairbrother in the state court action, Fairbrother's receipt of the writ of execution, Global's acquisition of Fairbrother's letter verifying the assignment and granting a power of attorney, and Global's belated security interest filings, all of which occurred within approximately one month. Moreover, a reasonable jury could find the Global/Fairbrother transfer resulted in Fairbrother transferring substantially all his assets

and rendering Fairbrother insolvent. Fairbrother testified at his deposition he has no assets with which to pay Neavitt on the state court judgment.

In sum, viewing all of this evidence in a light most favorable to AMF, a genuine issue of material fact remains as to whether the Global/Fairbrother Agreement is a fraudulent transfer. Accordingly, a genuine issue of material fact remains as to whether Global is a party to the AMF/Fairbrother Agreements with standing to enforce those Agreements. The Court therefore will deny Global's motion for summary judgment on its breach of contract and replevin/claim and delivery claims.

### III. MOTION TO INTERVENE

Neavitt moves to intervene as of right, arguing he is Fairbrother's creditor and Global's claim that Fairbrother assigned Global his interests in the Monuments impairs and impedes Neavitt's writ of execution on Fairbrother's interests in the Monuments. Global opposes the motion, arguing that because Neavitt is a Nevada resident, his presence in the lawsuit as a plaintiff would destroy diversity jurisdiction because AMF is a non-diverse Defendant also residing in Nevada. Second, Global argues Neavitt has no significant protectable interest in the action because he is merely an unsecured creditor seeking to satisfy a personal judgment against Fairbrother and that interest is insufficient to permit intervention. Finally, Global argues Neavitt's motion to intervene is untimely, as he has known about this litigation since its inception but has not moved to intervene until recently.

Neavitt responds that once the Court properly aligns his interests with AMF's, his presence in the suit does not destroy diversity jurisdiction. Neavitt also argues he has a protectable interest in this litigation because he does not seek to collect on a judgment but instead seeks to establish Global's claim of interest in the Monuments is based on a fraudulent conveyance and Global has no right to the Monuments. Finally, Neavitt argues his motion is timely because he thought AMF adequately could protect his interests in this suit until Global argued AMF had no standing to argue the Global/Fairbrother Agreement

17

was a fraudulent transfer because AMF was not Fairbrother's creditor.

A party seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must move to intervene in a timely manner, have a significantly protectable interest relating to the property or transaction that is the subject of the action, and be situated such that the disposition of the action may impair or impede the party's ability to protect that interest. Arakaki v. Cayetano, 324 F.3d 1078, 1083 (9th Cir. 2003). Further, a party may not intervene as of right where existing parties adequately represent its interests. Id. Courts liberally construe Rule 24 in favor of the party attempting to intervene. Id.

An intervenor's interests are impaired or impeded if a determination in the action would substantially affect "'in a practical sense'" those interests. S.W. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes). The availability of another forum is a factor to consider in determining whether the pending action will impair or impede an applicant's interests sufficiently to support intervention as of right. Fed. Deposit Ins. Corp. v. Engle, 524 F.2d 1339, 1341 (9th Cir. 1975).

Assuming Neavitt's motion is timely, Neavitt has failed to establish denying intervention in this action would impair or impede his ability to protect his interests in the AMF/Fairbrother Agreements and the Monuments. Neavitt has other avenues and forums through which to enforce his judgment creditor rights, including procedures associated with the writ of execution and bringing a fraudulent transfer claim against Global in a separate action. For example, Nevada's writ of execution procedures permit third parties who claim an interest in property levied on a means to challenge the levy. See Nev. Rev. Stat. § 31.070. Additionally, Nevada provides creditors a cause of action for fraudulent transfer and includes among the potential remedies levying execution on the transferred assets. See Nev. Rev. Stat. §§ 112.180, 112.190, 112.210. Global has not suggested that a determination on the fraudulent transfer issue in this case would have a preclusive effect on

18

1  Neavitt in another forum.  Compare Engel, 524 F.2d at 1341 (holding that suggestion by
2  adverse party that judgment would bind proposed intervenors in any other forum impeded
3  intervenors as a practical matter in their ability to protect their interests and thus they were
4  entitled to intervene as matter of right).  Neavitt has not explained how this action will
5  impede or impair his ability to protect his interests through other means besides his
6  conclusory allegation that Neavitt's "right to affect the monuments by writ of execution in
7  state court will be impaired or defeated."  (Proposed Intervenor's Reply to Pl.'s Opp'n to
8  Def.'s (sic) Mot. for Leave to Intervene [2:06-CV-00050, Doc. #39] at 9.)  Neavitt offers no
9  evidence, such as an affidavit as to efforts taken to proceed on the writ of execution and
10 how those efforts have been frustrated by Global's claim of interest, to support this
11 conclusory statement.  The Court therefore will deny Neavitt's motion to intervene as of
12 right.[4]

**IV. CONCLUSION**

   IT IS THEREFORE ORDERED that Global EventMakers, Inc.'s ("Global")
Motion for Partial Summary Judgment (2:05-CV-00019-PMP-PAL, Doc. #76) is hereby
DENIED.

   IT IS FURTHER ORDERED that Global's Motion for Partial Summary
Judgment Directed to AMF's Counterclaim (2:05-CV-00019-PMP-PAL, Doc. #85) is
hereby GRANTED in part and DENIED in part.  The motion is granted as to AMF's
counterclaim for fraudulent transfer.  Claim one of AMF's Counterclaim (2:06-CV-00050-
PMP-PAL, Doc. #29) is hereby dismissed with prejudice.  The motion is denied in all other
respects.

///

///

---

[4] Neavitt has not moved to intervene permissively under Rule 24(b).

      IT IS FURTHER ORDERED that AMF's Motion for Summary Judgment as to AMF's Claims of Fraudulent Transfer (2:05-CV-00019-PMP-PAL, Doc. #83, #94; 2:06-CV-00050-PMP-PAL, Doc. #31) is hereby DENIED.

      IT IS FURTHER ORDERED that Thomas Neavitt's Motion for Leave to Intervene (2:06-CV-00050-PMP-PAL, Doc. #36) is hereby DENIED.

DATED:   October 24, 2006

_____
PHILIP M. PRO
Chief United States District Judge